[Civ. No. 14922. First Dist., Div. One. Mar. 24, 1952.]

MERVIN LEEDS, Appellant, v. ROBERT D. GRAY et al., Respondents.

Norman Stiller and Harold Wattenberg for Appellant.

Edmund G. Brown, Attorney General, and Richard H. Perry, Deputy Attorney General, for Respondents.

BRAY, J.—Petitioner appeals from an order of the superior court denying his petition for a writ of mandate to compel the California State Personnel Board to restore him to his former position.

### QUESTIONS PRESENTED

1. Sufficiency of evidence. 2. Did petitioner have a full and fair hearing before the board? 3. Where the hearing officer made no findings and the board heard no witnesses, is the board's order valid? 4. Is the punitive action excessive?

### RECORD

Petitioner was a referee of the Unemployment Insurance Appeals Board, Department of Employment. Charges were preferred against him before the State Personnel Board. Petitioner had a hearing before a hearing officer. However, no member of the board was present. The hearing officer made no findings, decision or recommendation. The Personnel Board reviewed the transcript of the proceedings and made certain findings in his favor and certain against him. It then ordered him demoted from his position to that of Employment Security Officer, Grade 2. Heard with these charges was petitioner's appeal from the factor ratings of his performance report. The Personnel Board adjusted his record upward in certain respects. Petitioner then applied to the superior court for a writ of mandate as above mentioned. The matter was heard on the transcript of the proceedings before the board and denied.

### CHARGES AND FINDINGS

After a probationary period of six months during which he received good performance reports, petitioner acquired permanent status as referee. At the time the charges were filed his overall period of service in that capacity was approximately 15 months. (He had over nine years service with State Civil Service.) His superior, Healy, had become dissatisfied with petitioner's work, kept a record in a book of his shortcomings, and had called a meeting of the reporters who had reported his hearings to discuss his behavior in them. Healy then caused charges to be filed against petitioner.

The charges which the board found to be true follow: Generally, incompetency, inefficiency, inexcusable neglect of duty, physical or mental disability, insubordination, discourteous treatment of the public or other employees and other failure of good behavior or acts which are incompatible with

or inimical to the public service; that his temperament, personality and disposition are such that as referee, he was rude, intolerant, argumentative, brusque, discourteous, easily annoyed and is now unable to consistently conduct hearings in a judicial, impartial, objective, dispassionate, calm, fair and courteous manner. Specifically he conducted certain named hearings in a rude, unfair, discourteous and insulting manner, frequently ridiculed the claimants, causing them to become excited and upset, causing some to be reduced to tears, manifested his anger by raising his voice and getting red in the face.

1. *Sufficiency of the Evidence*:

Petitioner attacks the sufficiency of the evidence from many corners. He contends that his superior, Healy, became angry at him because one day in his absence petitioner took from Healy's desk a box of candy which he intended to replace, and from then on Healy started to build up a case against him and for that purpose kept entries in a black book; that the 43 letters written by Healy to him before the charges were brought, and which appear to be attempting to correct his conduct, were intended to upset him and to enable a case to be built against him. Again, he attacks the credibility of the witnesses against him; the claimants were all persons of whose claims he had recommended denials; the department reporters who testified against him were "very much alike, ostentatious, pompous, definite and enjoying the cynosure of being a witness." Petitioner points out that his testimony and that of witnesses called in his behalf was contrary to that of the witnesses called against him. All these and the many other criticisms of the evidence against him were matters affecting the weight of the evidence and for the determination of the board. (There is no trial de novo in the superior court in this character of proceeding.) It would serve no purpose to detail the evidence concerning the charges which the board found true. Suffice it to say that there is ample evidence to support their findings. This is true, even though, as claimed, approximately two thirds of the transcript of the evidence before the board contains evidence concerning charges on which the board found in favor of petitioner.

Actually, the most damning evidence against petitioner is the transcripts of various hearings he conducted, which definitely show that because of a lack of a judicial, impartial,

objective temperament and a fair and courteous manner, he is unfit to be a referee.

Petitioner contends that the general charges above mentioned were too general and did not give him a fair notice of details of time, place, names, etc. Possibly this contention has merit. However, at the hearing it was pointed out that these charges were to be proved only by the proving of the specific charges and items which were set forth in detail in the accusation. Actually they are not independent of those charges and items and are merely conclusions as to the manner in which the specified hearings were conducted, and petitioner's conduct therein. We fail to see how petitioner is injured by what is at most a general summing up of his conduct and manner in the particular hearings.

Petitioner contends that the modification upward by the board in some respects of his ''Report of Performance'' is inconsistent with their findings against him on certain charges. The original report was made by his superior, Healy. With the exception of ''quality of work'' which was rated ''Improvement needed to reach standard'' it rated all other ''Performance Factors'' as ''Unacceptable.'' The board changed these factor ratings as follows: ''Quantity of Work,'' ''Work Habits,'' ''Initiative,'' from ''Unacceptable'' to ''Improvement needed''; ''Analytical Ability'' from ''Unacceptable'' to ''Standard Outstanding.'' They left ''Relationships with People,'' ''Dependability'' and ''Overall Rating'' ''Unacceptable,'' and ''Quality of Work,'' ''Improvement needed.'' Obviously this change of rating is in nowise inconsistent with their finding that he was unfit to act as a referee. In fact it supports such conclusion.

2. *Fair Hearing.*

Petitioner contends that he was denied a fair and full hearing, first, because the pattern of action followed by the department prior to trial hampered and prejudiced his defense. (a) The maintaining of a ''black book'' by Healy, setting forth petitioner's derelictions, constitutes an unfair means of supervisory control. Merely to state this contention shows its absurdity. (b) The 43 corrective letters written petitioner by Healy were ''a device to keep constant pressure'' on petitioner. Even though the board found untrue Healy's charges that petitioner was incompetent and inefficient, we find no reason why the head of a department may not write letters to his subordinates criticizing their conduct. Even if

the letters were not well based .and their character was subject to the criticism which defendant makes of them, that fact would not affect the fairness of the hearing where the question was the proof of specific charges. (c) Petitioner contends that because of his civil service status charges should not have been brought against him. Petitioner should have been given "a transfer" or Healy should have endeavored to correct petitioner's deficiencies. The latter was what Healy claimed he was trying to do by the letters, and their purport supports that contention. It would appear that a superior who writes 43 corrective letters to a subordinate before preferring charges is not overly anxious to prefer them. Just what is meant by "a transfer" does not appear, but we know of no requirement that the failure to give "a transfer" constitutes unfairness at a trial on charges preferred. (d) Healy, prior to bringing charges, conferred with reporters who had reported hearings wherein petitioner was referee, asking them how petitioner conducted those hearings. It is contended that persons representing the·department made investigations of petitioner's conduct. How these deprived petitioner of a later fair hearing we fail to understand. (e) Petitioner contends that he should have been permitted to inspect the records of the conferences, ex parte hearings and investigations, which he claims occurred prior to the filing of charges against him, the request for which was denied. We know of no requirement that these matters be submitted to him. (f) Petitioner requested permission to interview certain department employees who might be prospective witnesses for either side *on state time*. He was informed that he would not be permitted so to do either on state time or state property. We know, and have been cited to, no requirement that a civil service employee against whom charges have been filed, is entitled as a matter of law to go on state property and interview state employees at state expense.

3. *The Board Did Not See the Witnesses.*

The most serious question is based on petitioner's contention that "he who decides must hear" and thereby petitioner was denied due process. The hearing officer made no findings or recommendation. The board came to its determination from an examination of the proceedings before that officer, no member of the board having heard the testimony of the witnesses. The Morgan cases, *Morgan* v. *United States,* 298 U.S. 468 [56 S.Ct. 906, 80 L.Ed. 1288] and 304 U.S. 1

[58 S.Ct. 773, 82 L.Ed. 1129], held that in order to constitute due process "he who decides must hear." Is the rule of those cases applicable to administrative proceedings in this state? *California Shipbuilding Corp.* v. *Industrial Acc. Com.,* 27 Cal.2d 536 [165 P.2d 669] (Cert. den. 324 U.S. 843 [65 S.Ct. 675, 89 L.Ed. 1405]), held that there had been no denial of due process where the commission denied a rehearing without reading the petition for rehearing or the transcript of the evidence, but based their denial on the referee's "report which briefly states the contentions of petitioner, the general facts (in the form of findings rather than a summary of the evidence) interspersed with his conclusions, and his recommendation that rehearing be denied." (Pp. 543-544.) In *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 246 [217 P.2d 630, 18 A.L.R.2d 593], the court said: "If the hearing is held before a hearing officer alone, the agency may adopt the officer's 'proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision' (Gov. Code, § 11517(b)), without reading the record (*Hohreiter* v. *Garrison* (1947), *supra,* 81 Cal. App.2d 384, 397); or may adopt a different decision 'upon the record, including the transcript, with or without taking additional evidence' (Gov. Code, § 11517(c)). It thus seems that the Legislature simply intends that an agency member who exercises his own independent judgment on the case, as distinguished from adopting a hearing officer's decision either in its entirety or with a reduced penalty, must be acquainted with the record but need not be physically present when the evidence is produced."

Article XXIV, section 2 of the Constitution provides for a State Personnel Board. ". . . the adoption of rules and regulations, the creation and adjustment of classifications and grades, and dismissals, demotions, suspensions and other punitive action for or in the state civil service shall be and remain the duty of the board and a vote of a majority of the members of said board shall be required to make any action with respect thereto effective." Thus the final determination of proceedings for demotion initiated by a particular agency is the duty of the board solely. Can the board perform this duty without seeing the witnesses, particularly where the hearing officer who did see the witnesses makes no report or recommendation? As pointed out heretofore, it was held in *California Shipbuilding Co.* v. *Industrial Acc. Com., supra,* 27 Cal.2d 536, that due process was not denied where the commission on appli-

cation for rehearing, without reading the report or transcript of the evidence, adopted the recommendation of a referee who had not heard the evidence, but had acted merely on the written record. That court said: "There is nothing inconsistent in such procedure with the doctrine that 'he who decides must hear,' announced" in the Morgan cases. The situation in the California Shipbuilding case, *supra,* differs somewhat from that in our case in that there the commission had already acted in making its award and the proceedings now were for a rehearing. However, it is significant that so far as the rehearing was concerned, neither the referee who recommended nor the commission which acted, actually saw or heard the witnesses.

It is interesting to note the comment and recommendations of the Judicial Council concerning administrative procedure in its Tenth Biennial Report. It states (p. 23) that at first it concluded "that an initial decision should be made in all cases by the person or body which heard the evidence. This was an adaptation of the rule of the *Morgan* cases . . . It has never been clear whether the *Morgan* cases state a rule of due process or merely involve the interpretation of a particular statute. Whether or not the *Morgan* cases actually impose restrictions upon State administrative agencies, however, the principle announced was thought sound . . . The tentative proposals of the Council, therefore, provided that the initial decision should be made by the agency if the agency members heard the case and by a hearing officer if he sat alone. . . .

"The tentative Council proposal met with considerable objection upon the ground that the full power of decision should remain with the agency in each case. . . .

"The proposals were modified considerably, therefore, with respect to the decision process. . . . If the agency itself hears the case, it decides it. If a hearing officer alone hears the case he prepares a proposed decision in the form required for the final decision. The agency may adopt this proposed decision or it may reduce the penalty and adopt the balance. If the agency does not so adopt the proposed decision, it must furnish the parties with copies of the proposed decision and must allow them to argue either orally or by brief. It may then decide the case itself on the basis of the record before the hearing officer and the arguments. If new evidence is to be taken, the agency may hear it itself or it may assign the case to a hearing officer. He also prepares a proposed decision but

this time the parties must be given a chance to argue to the agency before the agency decides.

". . . The result of the Council proposal is that, in fact, the decision is made in every case by someone familiar with the proceedings *and before whom an opportunity to argue the case is afforded:* the hearing officer if his decision is adopted; the agency itself if it does not adopt the proposed decision." (Italics added.)

It will be noted that it is suggested that if the agency does not adopt the decision proposed by the hearing officer it may make a new or different decision, provided only that the parties are given an opportunity to argue, either orally or by brief. This suggestion, coupled with the decision in *Cooper* v. *State Board of Medical Examiners, supra,* 35 Cal.2d 242, to the effect that a board member who has read only the transcript may participate in a decision, and also coupled with the ruling in the above-mentioned California Shipbuilding case to the effect that on rehearing neither the referee nor the board need have heard the witnesses, indicates that the important matter, where the hearing officer has not made a recommendation, is that the persons affected be given an opportunity to *argue* before the agency which finally determines the matter. In our case the matter was submitted on briefs. In *Hohreiter* v. *Garrison,* 81 Cal.App.2d 384 [184 P.2d 323], a proceeding was brought to revoke an insurance agent's license. The hearing was had under the Administrative Procedure Act, and conducted by a hearing officer. He prepared and delivered to the Insurance Commissioner a proposed recommendation and decision. Without reading the record of the hearing the commissioner adopted his decision *in toto.* In holding that this procedure was proper, the court pointed out that section 11517 of the Government Code, which provides the "Method of decision in contested cases" under the Administrative Procedure Act, provides, in effect, that where the hearing officer proposes a decision or makes a recommendation and the board desires to overrule or reverse that decision, it is not necessary that any member of the board have seen the witnesses or heard them testify; it is sufficient if they examine the record and permit argument. We can see no practical difference between a situation where the board, by an examination of the record and the permitting of argument, may disregard entirely the decision of the hearing officer who passes on the credibility of the witnesses, and one where in the same manner the board makes its determination without

any prior opinion of the officer. It is neither reasonable nor logical to hold that the board can, by review of the record, disregard the officer's determination of the credibility of witnesses, but that it may not review such record where the hearing officer has not given his opinion.

 So far we have been discussing the case as if the Administrative Procedure Act applied to these proceedings. But it does not apply. As said in the Judicial Council's Tenth Biennial Report, page 29, "Thus, no attempt was made to cover preliminary investigatory proceedings, routine examination procedure, informal adjudications, or the formal adjudications of such agencies as the Industrial Accident Commission, the Railroad Commission, the State Personnel Board, the California Employment Stabilization Commission and many others." Neither the Department of Employment nor the State Personnel Board is one of the agencies which section 11501 of the Government Code includes as subject to the provisions of that act. The act under which petitioner was tried is the Civil Service Act. It then provided that the hearing be held by "the board or its duly authorized representative." (Gov. Code, § 19578.) "The board shall consider carefully the evidence submitted in the hearing and render a decision which in its judgment is just and proper." (Gov. Code, § 19582.) "Hearings may be held by the board, or any member or any authorized representative or referee *but the decision shall be rendered by the board after careful consideration of the evidence submitted in the hearing.*" (Gov. Code, § 19585.) (Italics added.) Section 19587 provides that rehearings, if granted, may be heard by the board "or its authorized representative." There is no requirement, as under the Administrative Procedure Act and the act providing for hearings by the Industrial Accident Commission that the authorized representative make any findings or recommendation or proposed decision. Nor is there any requirement that the board see and hear the witnesses. Therefore, the situation is even stronger than in the Hohreiter case, *supra,* 81 Cal.App.2d 384, where it was held not to violate due process for the agency, without seeing or hearing the witnesses, to reverse the hearing officer merely from a review of the record.

Petitioner, of course, was entitled to a fair and full hearing. The fact that a fact finding tribunal does not see or hear the witnesses does not in every instance constitute a denial

of such hearing. For example, many court proceedings are determined upon affidavits. There the court neither sees nor hears the witnesses. ■ A fair and full hearing is given where the fact finder fully reviews the record and an opportunity is given the parties to argue their contentions as to the credibility of the witnesses and the other matters involved in the proceeding. ■ This was done in our case by briefs. It is true that no proposed findings or decision were submitted to the parties and no opportunity given to argue concerning them, but where the board itself is passing on the record, fully considers it and the arguments presented, on the merits, there is no requirement that the board permit · further argument on its proposed findings and decision, and no logical reason therefor.

■ Petitioner contends that the fact that the review permitted to the superior court in this case does not include a trial de novo,* requires, in order to constitute due process, that either the hearing officer should pass on the credibility of the witnesses or the board should hear them. We fail to find in any of the cases any distinction between the duties of the agencies or their representatives in cases where a trial de novo review in the superior court is permitted and one where it is not permitted. The Industrial Accident Commission, involved in the California Shipbuilding case, *supra,* is a constitutional agency which, like the Personnel Board, is not subject to the de novo trial method of review. The distinction urged by petitioner is one without a difference in effect. In *Bandini Estate Co.* v. *Los Angeles,* 28 Cal.App.2d 224 [82 P.2d 185], it was held that the board of supervisors, sitting as a board of equalization, could not, *in view of constitutional and statutory requirements,* delegate the hearing of petitions for reduction of assessments to one member, is not in point. In our case, the Constitution provides only that the ultimate determination of demotions shall be the duty of the board by a vote of a majority of its members. The statute, as pointed out, authorizes the hearing to be conducted by "an authorized representative."

■ Petitioner contends that in ruling on the admissibility of evidence, determining motions and in performing the other functions of a hearing officer, this representative was exercis-

---

*The Personnel Board is a statewide agency, specifically given quasi-judicial or adjudicatory power by the Constitution. Hence, its determinations of fact are not subject to reexamination in a superior court trial de novo. See *Covert* v. *State Board of Equalization,* 29 Cal.2d 125 [173 P.2d 545]; *Boren* v. *State Personnel Board,* 37 Cal.2d 634 [234 P.2d 981].

ing powers which the Personnel Board had no right, under the Constitution, to delegate to him. No authority is cited for this proposition. The Constitution does not prohibit this action. Moreover, it did not constitute a delegation of the powers or authority of the board for the reason that the final action is that of the board, which on a review of the record either approves or disapproves of the rulings made by its representative.

4. *Is the Punitive Action Excessive?*

Petitioner contends that the board's action in demoting him as referee was too drastic, and asks that we send the matter back to the board to reconsider the penalty. The actions of the petitioner at the various hearings at which he was referee, as disclosed by the transcripts in evidence, along with the other evidence in the case, support the conclusion that petitioner is not temperamentally fit to act as referee. Such being the case, the board might have been derelict in its duty had it not demoted him from that position. We fail to see any abuse of discretion here.

The order is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

The opinion was modified to read as above printed on April 21, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1952.